# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: | |
| JOSEPH A. LYKINS, | Case No. 92-14689-RGM |
| Debtor. | (Chapter 13) |
| JOSEPH A LYKINS and GGGR INVESTMENTS, LLC, | |
| Plaintiff, | |
| vs. | Adv. Proc. No. 05-1205 |
| CAROL BOTTALICO, | |
| Defendant. | |

## MEMORANDUM OPINION

Carol Bottalico made a loan to Joseph A. Lykins to assist him in purchasing a house. No payments were made on the loan and it was eventually re-written and replaced by a note dated September 14, 1992.[1] No payments were made on the new note. About October 25, 1994, Bottalico filed suit on the note in Arlington County General District Court. The first court date was November 28, 1994. The debtor appeared pro se and disputed the debt. The case was set for trial which was held on May 9, 1995. Lykins appeared at the trial, again pro se, and unsuccessfully defended the suit on the merits. Judgment was entered against him. The judgment was docketed on May 14, 2001 and ostensibly attached to the real property in question in this case.

---

[1] This note was secured by a second deed of trust on property that was eventually sold at foreclosure to satisfy the first deed of trust. There were no proceeds available to pay Bottalico.

1

What Bottalico did not know until October or November 1996 was that Lykins had filed bankruptcy on January 19, 1990 under chapter 7[2] and again on October 1, 1992 under chapter 13.[3] She was not listed as a creditor in either case. He was granted a discharge in his chapter 7 case on November 27, 1990. The chapter 13 case was dismissed on March 5, 1996. Bottalico unwittingly filed her suit and obtained her judgment during the pendency of the second bankruptcy.

Lykins filed his third petition in bankruptcy, a chapter 13 case,[4] on October 24, 1997. Bottalico was listed as a creditor and knew about the case. Lykins, again acting pro se, filed a motion and a complaint seeking to avoid her deed of trust[5] on the ground that there was no equity in the property to support the lien of her deed of trust and she, also pro se, objected to confirmation of Lykins' chapter 13 plan. On November 18, 1997, the third case was dismissed and Lykins' motion was denied.[6] The adversary proceeding was also dismissed as moot.

GGGR Investments, LLC, purchased the property ostensively subject to Bottalico's judgment lien on December 5, 2003. It had notice of the judgment lien which by this time had been promoted to first priority position because it was not paid when the property was refinanced after the judgment was docketed.

GGGR Investments successfully reopened the 1992 chapter 13 case and filed this adversary proceeding seeking a declaration that the docketed judgment was invalid. It asserts that the

---

[2]*In re Joseph A. Lykins,* Bankr.E.D.Va., Case No. 90-11749.

[3]*In re Joseph A. Lykins,* Bankr.E.D.Va., Case No. 92-14689.

[4]*In re Joseph A. Lykins,* Bankr.E.D.Va., Case No. 96-15860.

[5]*See* n. 1, *supra.*

[6]Lykins filed his fourth petition, a case under chapter 7, on January 5, 2005. *In re In re Joseph A. Lykins,* Bankr.E.D.Va., Case No. 05-10030.

2

judgment was void because it was obtained in violation of the automatic stay during the pendency of the 1992 case. "As a result of the pending bankruptcy, the County Court had no subject matter jurisdiction to entertain the case and entry of the judgment was a violation of the automatic stay; said judgment being void *ab initio*." Complaint, ¶5. Since the underlying judgment is void, it argues, the judgment lien is also void.

Bottalico argues that the judgment is not void, only voidable, and that it should not be voided in this instance. She asserts that the judgment should not be voided because Lykins, and therefore GGGR Investments as his successor in interest, is barred by laches from raising the issue because of the lapse of time and is estopped from raising the issue because he did not raise it in the General District Court. In any event, the chapter 13 case was dismissed without a discharge and the lien would be reinstated by virtue of §349 of the Bankruptcy Code.[7]

The court need not resolve the question of whether an action taken in violation of the automatic stay is void or voidable. *See Winters v. George Mason Bank,* 94 F.3d 130, 136 (4th Cir.1996) (acknowledging the split of authority but finding it unnecessary to address it). The automatic stay recognizes the significant benefit of preserving the status quo as of the filing of a petition in bankruptcy. However, imposition or continuation of the full automatic stay may not be appropriate in all circumstances. Congress created a broad automatic stay tempered by a grant to the bankruptcy court of equally broad authority to tailor it to the particular circumstances of a case. Section 362(d) permits the court to grant relief from the automatic stay "such as by terminating,

---

[7]The assertion that §349 reinstates the judgment if it were otherwise voided by operation of §362 is not well taken. Section 349(b)(2) provides that dismissal of a case "vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553". If Bottalico's judgment is void, it is void because of the operation of §362, not from the operation of one of the Bankruptcy Code sections referred to in §349(b)(2). Section 349 is intended to restore the status quo as of the filing of the petition in bankruptcy, not validate improper or void actions taken after the filing of the petition.

3

annulling, modifying, or conditioning" the stay.  Bankruptcy Code §362(d).  Each of the four types of relief enumerated by Congress reflects a different action that a court may take to balance the benefits and the burdens arising from preserving the status quo.  Three of the actions – terminating, modifying and conditioning the stay – necessarily recognize the existence of the automatic stay and operate on the automatic stay as in effect.  They suggest the many ways in which a court can mold the automatic stay to fit the particular circumstances of a case.  The fourth term – annulling the stay – suggests an entirely different approach.  Annulment, while recognizing that the automatic stay arose upon commencement of the case, permits a court to treat the stay as if it had never arisen.

The automatic stay can be annulled as to Bottalico's judgment.  Even if the judgment would have been void by virtue of the imposition of the automatic stay rather than merely being voidable, it will be fully effective if the automatic stay is annulled.  The legal effect of annulling the stay is to eliminate the stay itself from the legal analysis of the validity of the judgment, proceeding as though it never arose in the first instance as to Bottacilo.  3 COLLIER ON BANKRUPTCY ¶362.07[i] (15th ed. 2005).  *See also Cooper v. GGGR Investments, LLC (In re Cooper)*, 334 B.R. 179, 194 (E.D.Va. 2005) (automatic stay annulled where deed was signed after order dismissing case was signed but before the order was entered on the docket).[8]  If the automatic stay in the second bankruptcy case is nullified *ab initio,* the judgment and the judgment lien, unless otherwise defective, are valid and fully enforceable.

This is a case where the automatic stay should be annulled.  Lykins appeared in the General District Court while his bankruptcy case was pending and vigorously defended the case.  His

---

[8]While the stay violation in this case is more than the technical violation in *Cooper v. GGGR Investments* the relief granted to GGGR Investments in that case by annulling the stay serves the same purpose and reaches the same just result as annulment of the stay in this case.

bankruptcy case was later dismissed. Lykins later filed a third bankruptcy in which he attempted to avoid Bottalico's deed of trust. He did nothing to challenge her judgment although he clearly knew about it. After the third case was dismissed, he remained silent for more than seven years. His silence misled Bottalico into believing that she had a valid judgment and, later, a valid judgment lien. It induced her to take no action. Eventually, the statute of limitations ran on her action on the note. If the judgment is now invalidated because it was improperly obtained during the pendency of the chapter 13 case that was later dismissed, Bottalico would be barred from recovery by the statute of limitations. Had Lykins not misled Bottalico by his silence, she could have sued him after his second bankruptcy case was dismissed, obtained a judgment and docketed it. She would have been in the same position today had she followed this process as she thought she was for the last several years. The difference in results arises solely from Lykins' silence and is not just where the purchaser of the real property was on notice at the time that it purchased the property that the judgment lien existed. No one is prejudiced by annulling the automatic stay. Bottalico is paid as she would have been had Lykins not remained silent. GGGR Investments has recourse against Lykins on his warranties in his deed unless the lien was already taken into account in the purchase price. In either event, it suffers no loss. Lykins, who borrowed the money in the first instance, repays the long overdue loan. Invalidating the judgment, however, prejudices Bottalico and gives Lykins and GGGR Investments a windfall.

The result in this case follows the equitable maxim that he who remains silent when he should speak will not be heard to speak when he should remain silent. GGGR Investments which was on notice of the judgment lien can rise no higher than Lykins with respect to his silence.

The parties did not address another question: The effect of the discharge stay, Bankruptcy

5

Code §524, that arose in the first bankruptcy case. The discharge stay, Bankruptcy Code §524 "voids any judgment at any time obtained . . ." The purpose of the broad discharge stay was to eliminate the practice that existed under the Bankruptcy Act of 1898 which merely made a bankruptcy discharge an affirmative defense in a subsequent suit, an attribute that was frequently abused by creditors. If the defense was not raised by the debtor, it was waived. Section 524 changed this. Any action on a discharged debt is void even if the debtor protected by the discharge fails to appear in the suit. In this instance, if the suit in the General District Court of Arlington County in 1994 violated the 1990 discharge stay, the judgment is void. GGGR Investments' argument that a void judgment cannot support a later judgment lien arising from the docketing of a void judgment is a correct statement of the law, and, the judgment lien would be void.

The first bankruptcy case was filed on January 19, 1990. If Lykins was indebted to Bottalico when he filed his first bankruptcy case, his obligation to her may have been discharged by the chapter 7 discharge granted to him in that case. The case was a no-asset case and no bar date was set for filing proofs of claim. Bottalico's claim may have been discharged notwithstanding the fact that she was not listed. *In re Boyd,* Bankr.E.D.Va. 2005, Case No. 99-80463. The critical issues are when Bottalico's claim arose and whether it was dischargeable. The parties did not address these issues.

The comments relating to the date the original obligation arose are muddled. Bottalico testified, in passing, that the loan was made in the late 1980s in connection with the purchase of a property by Lykins, but she was not sure of the date. However, the promissory note (which was admitted into evidence) is dated September 14, 1992 and recites that it is subordinate to a first deed of trust dated April 5, 1990. The deed of trust referred to may well encumber the property Lykins

6

purchased in connection with Bottalico's loan. This would indicate that her loan was made about April 5, 1990. The difference between the late 1980's, that is, before January 19, 1990, the date Lykins filed his chapter 7 petition, and April 5, 1990, is critical. In one case, the obligation is a pre-petition debt; in the other, a post-petition debt. To muddy the waters even more, one of GGGR Investments' exhibits, a letter demanding that the judgment lien be released, stated that the debt was "evidenced by a note dated May 13, 1991".

The parties did not address the dischargability of the original debt. The matter will be reset on the docket to consider all matters in connection with the discharge stay entered in the first bankruptcy case, Case No. 90-11749 filed on January 19, 1990.

Alexandria, Virginia
January 30, 2006

                                                /s/ Robert G. Mayer
                                                Robert G. Mayer
                                                United States Bankruptcy Judge

copies to:

Stephen K. Christenson
Dominique V. Sinesi

12667